**William CROMWELL, Petitioner,**

v.

**John P. KEANE, Respondent.**

**No. 98 Civ. 0013(JSR).**

United States District Court, S.D. New York.

Jan. 12, 1999.

William Cromwell, Woodbourne, NY, pro se.

### MEMORANDUM ORDER

RAKOFF, District Judge.

Petitioner, *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on December 5, 1997. By Order dated January 5, 1998, the Honorable Thomas P. Griesa, Chief Judge of the Southern District of New York, directed petitioner to show cause why the petition should not be dismissed as untimely under the Antiterrorism and Effective Death Penalty Act, Pub.L. No. 104–132, 110 Stat. 1214 (1996) ("AEDPA"), since the petition was filed over 19 months after the effective date of the AEDPA. Petitioner responded by Affidavit dated March 31, 1998, offering reasons why his petition should not be so dismissed. On May 27, 1998, the Honorable Andrew J. Peck, United States Magistrate Judge, filed a Report and Recommendation recommending that the petition be dismissed as untimely under the AEDPA. Having received objections from petitioner, the Court, after undertaking a full *de novo* review, hereby adopts the Magistrate Judge's Report and Recommendation in all material respects. In particular, with respect to petitioner's claim that he qualifies for an "actual innocence" override of AEDPA's statute of limitations, the Court finds that, even assuming, *arguendo*, that such an override exists, petitioner's proffered "new evidence" of innocence is neither new nor admissible. *See Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995); *see also Alexander v. Keane*, 991 F.Supp. 329, 338 (S.D.N.Y.1998). Accordingly, the petition is dismissed with prejudice. Clerk to enter judgment.

SO ORDERED.

### REPORT AND RECOMMENDATION

PECK, United States Magistrate Judge.

Pursuant to Rule 4 of the Rules Governing Section 2254 cases in the United States

District Courts, 28 U.S.C. foll. § 2254, I recommend that the Court summarily dismiss petitioner William Cromwell's habeas corpus petition on the ground that he is not entitled to relief, since his December 5, 1997 petition is untimely under the one-year limitation period imposed by the Antiterrorism and Effective Death Penalty Act ("AEDPA").

## FACTS

Petitioner Cromwell's habeas petition was received by the Court's Pro Se Office on December 5, 1997. (*See* Petition.) The Petition indicates that on December 8, 1983, Cromwell was convicted of murder in the second degree, criminal possession of a weapon and assault, and was sentenced to 18 years to life imprisonment. (Petition ¶¶ 1–4.) The Appellate Division, First Department affirmed his conviction without opinion on March 17, 1988. *People v. Cromwell,* 138 A.D.2d 983, 526 N.Y.S.2d 875 (1st Dep't 1988). (*See* Petition ¶ 9(a) –(d).) The New York Court of Appeals denied leave to appeal on June 15, 1988 and denied reconsideration on August 17, 1988. *People v. Cromwell,* 72 N.Y.2d 857, 532 N.Y.S.2d 507, 528 N.E.2d 897, *reconsideration denied,* 72 N.Y.2d 917, 532 N.Y.S.2d 851, 529 N.E.2d 181 (1988). (*See also* Petition ¶ 9(e); Cromwell "Procedural History & Claims Presented" Supp. To Petition, at p. 3.)

In June 1996, petitioner Cromwell filed a pro se motion to vacate his conviction in New York Supreme Court pursuant to CPL § 440.10. The trial court denied the application on August 8, 1996 and the First Department denied leave to appeal on December 18, 1996. (*See* Cromwell "Procedural History & Claims Presented" Supp. To Petition at pp. 4–5 & Ex.; *see also* Petition ¶ 11(b).)

As previously noted, petitioner Cromwell filed his present federal habeas corpus petition with the Court's Pro Se Office on December 5, 1997. By Order dated January 5, 1998, Chief Judge Griesa directed Cromwell to show cause why the AEDPA's one-year statute of limitations should not bar his petition. By Affidavit dated March 31, 1998, Cromwell asserted that his habeas petition was not untimely for three reasons. First, Cromwell asserted that because he filed his

habeas petition within one year of the First Department's decision denying his CPL § 440.10 collateral attack, his habeas petition was timely. (Cromwell 3/31/98 Aff. at pp. 6–7.) Second, Cromwell relied upon Judge Sweet's decision in *Rosa v. Senkowski,* 97 Civ. 2468, 1997 WL 436484 (S.D.N.Y. Aug.1, 1997), *certificate of appealability granted,* 1997 WL 724559 (S.D.N.Y. Nov.19, 1997), for the proposition that application of the AEDPA's one-year statute of limitations would violate the Suspension Clause. (Cromwell 3/31/98 Aff. at pp. 3–4.) Third, Cromwell asserted that his petition should be entertained because he has shown evidence of "actual innocence." (*Id.* at 4–5.)

## ANALYSIS

### THE AEDPA'S STATUTE OF LIMITATIONS BARS CROMWELL'S PETITION

On April 24, 1996, President Clinton signed into law the Antiterrorism and Effective Death Penalty Act. The AEDPA, *inter alia,* instituted a one-year statute of limitations for habeas petitions filed after April 24, 1996:

(1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. . . .

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)–(2); *see Reyes v. Keane,* 90 F.3d 676, 679 (2d Cir.1996).

■ In *Peterson v. Demskie,* 107 F.3d 92 (2d Cir.1997), the Second Circuit held that "where a state prisoner has had several years to contemplate bringing a federal habeas corpus petition, we see no need to accord a full year after the effective date of the AEDPA." 107 F.3d at 93. Rather, the Second Circuit gave the prisoner a "reasonable time" after enactment of the AEDPA to bring his habeas petition. *Id.* (finding petition brought 72 days after enactment of AEDPA to be timely).

Here, Cromwell's conviction became final in 1988, some eight years before enactment of the AEDPA and over nine years before he brought his present habeas corpus petition. (*See* 1/5/98 Order at 2 & n. 2.) Thus, Cromwell must be allowed a "reasonable time" after the April 24, 1996 enactment of the AEDPA to bring his federal habeas petition.

Were it not for his CPL § 440.10 collateral attack, it is clear that Cromwell's December 5, 1997 petition—more than a year and a half after the April 24, 1996 effective date of the AEDPA—would be untimely. *See, e.g., Thomas v. Greiner,* 97 Civ. 2958, 1998 WL 236239 at *2 (S.D.N.Y. April 27, 1998) (Preska, D.J. & Peck, M.J.); *Espinal v. Walker,* 97 Civ. 3187, 1998 WL 151273 at *2 (S.D.N.Y. March 27, 1998) (Patterson, D.J. & Peck, M.J.); *Rodriguez v. Bennett,* 97 Civ. 5953, 1998 WL 104604 at *1 (S.D.N.Y. March 9, 1998) (Rakoff, D.J.); *Rowe v. Senkowski,* 97 Civ. 1549, 1998 WL 51288 at *1 (S.D.N.Y. Feb.4, 1998) (Rakoff, D.J.); *Acosta v. Artuz,* 985 F.Supp. 438, 439–40 (S.D.N.Y.1997) (Rakoff, D.J.); *Yeung v. Artuz,* 97 Civ. 3288, 1997 WL 572908 at *2 (S.D.N.Y. Sept.10, 1997) (Baer, D.J. & Peck, M.J.); *Roldan v. Artuz,* 976 F.Supp. 251, 253–54 (S.D.N.Y. 1997) (Batts, D.J. & Peck, M.J.); *Morales v. Artuz,* 97 Civ. 3337, 1997 WL 588990 at *2 (S.D.N.Y. Sept.9, 1997) (Baer, D.J. & Peck, M.J.); *Fluellen v. Walker,* 975 F.Supp. 565, 566–67 (S.D.N.Y. Sept.7, 1997) (Wood, D.J. & Peck, M.J.); *Lee v. Artuz,* 969 F.Supp. 872, 873–74 (S.D.N.Y.1997) (Stein, D.J. & Peck, M.J.). Indeed, the Court is not aware of any decision in this district finding a petition brought after April 24, 1997 to be timely where the state conviction was final before enactment of the AEDPA.

### A. Cromwell's State Collateral Attack Does Not Make His Petition Timely

Cromwell argues that the AEDPA's one-year statute of limitations should start running only from the First Department's December 18, 1996 denial of his CPL § 440.10 collateral attack. (Cromwell 3/31/98 Aff. at pp. 6–7.) Cromwell misses the import of § 2244(d)(2). That section does not state that the one-year statute begins to run anew after decision on a state collateral attack. Such an interpretation would allow an inmate to avoid the effect of the AEDPA's one-year statute of limitations through the device of bringing a belated state collateral attack.

Rather, § 2244(d)(2) merely excludes the time a collateral attack is under submission from the calculation of the one-year statute of limitations. Here, the AEDPA's statute of limitations, as interpreted by *Peterson,* had not expired in June 1996 when Cromwell brought his state collateral attack 40 days after the AEDPA's April 24, 1996 effective date. *See, e.g., Peterson v. Demskie,* 107 F.3d at 93; *Roldan v. Artuz,* 976 F.Supp. at 254 (*Peterson*'s outer limit likely between 6 and 9 months; dicta). The period that Cromwell's CPL § 440.10 motion was under consideration—from June 3, 1996 [1] to December 18, 1996 (198 days)—thus is not to be counted. Accordingly, the period from April 24, 1996 to June 3, 1996 (40 days) plus the period from December 19, 1996 to December 5, 1997 (352 days), for a total of 392 days, is the applicable period to determine if Cromwell's petition was timely.[2] Since 392 days exceeds one year (and obviously also exceeds the lesser "reasonable time" provided under *Peterson* ), Cromwell's habeas petition is untimely. *See, e.g., Rondon v. Artuz,* 97 Civ. 6904, 1998 WL 182424 at *1–2 & n. 2 (S.D.N.Y. April 17, 1998); *Thompson v. Herbert,* No. 97 CV 3645, 1998 WL 199823 at *1–2 (E.D.N.Y. March 16, 1998); *Latif v. Portuendo,* No. 97 CV 4527, 1998 WL 199846 at *1–2 (E.D.N.Y. March 16, 1998); *Pollard v. Stinson,* No. 97 CV 6429, 1998 WL 178870 at *1 (E.D.N.Y. March 6, 1998); *Jenkins v. Strack,* No. 97 CV 6153, 1998 WL 178867 at *1 (E.D.N.Y. March 6, 1998); *Rashid v. Khulmann,* 991 F.Supp. 254, 259 (S.D.N.Y. 1998) ("The tolling provision does not, however, 'revive' the limitations period (*i.e.,* restart the clock at zero); it can only serve to pause

---

1. The record is not clear when in June 1996 Cromwell brought his state CPL § 440.10 proceeding. To give him every benefit of the doubt, the Court will assume it was brought on June 3, 1996, the first business day in June 1996.

2. Stated another way, the period is from April 24, 1996 to December 5, 1997 (590 days), minus the June 3, 1996 to December 18, 1996 period (198 days), for the same total of 392 days.

a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations."); *Figueroa v. Kelly,* No. 97 CV 3394, 1997 WL 833448 at *4 (E.D.N.Y. Dec.19, 1997); *Howard v. Lacy,* 97 Civ. 2286, 1997 WL 749390 at *2 & n. 6 (S.D.N.Y. Dec.4, 1997); *Newton v. Strack,* No. CV 97–2812, 1997 WL 752348 at *2 (E.D.N.Y. Oct.15, 1997); *Batts v. Artuz,* No. CV 97–2222, 1997 WL 642322 at *1–2 (E.D.N.Y. Sept.5, 1997); *Hughes v. Irvin,* 967 F.Supp. 775, 778–79 (E.D.N.Y.1997); *Valentine v. Senkowski,* 966 F.Supp. 239, 240–41 (S.D.N.Y.1997).

### B. *The AEDPA's One–Year Statute of Limitations is Not Unconstitutional*

◼ Cromwell relies on Judge Sweet's Opinion in *Rosa v. Senkowski,* 97 Civ. 2468, 1997 WL 436484 (S.D.N.Y. Aug.1, 1997), *certificate of appealability granted,* 1997 WL 724559 (S.D.N.Y. Nov.19, 1997), for the proposition that application of the AEDPA's one-year statute of limitations would violate the suspension clause and thus be unconstitutional. (Cromwell 3/31/98 Aff. at pp. 3–4.) In a series of scholarly opinions, Judge Sotomayor disagreed with Judge Sweet's *Rosa* decision. *Rodriguez v. Artuz,* 990 F.Supp. 275, 277–84 (S.D.N.Y.1998); *accord, Alexander v. Keane,* 991 F.Supp. 329, 334–40 (S.D.N.Y.1998); *Albert v. Strack,* 97 Civ. 2978, 1998 WL 9382 at *4 n. 3 (S.D.N.Y. Jan.13, 1998); *Rashid v. Khulmann,* 991 F.Supp. 254, 260 n. 3 (S.D.N.Y.1998); *Santana v. Artuz,* 97 Civ. 3387, 1998 WL 9378 at *1 n. 2 (S.D.N.Y. Jan.13, 1998). The Court agrees with Judge Sotomayor's opinions. The Court also notes that Judge Rakoff agreed with Judge Sotomayor's conclusion in *Rodriguez v. Bennett,* 97 Civ. 5953, 1998 WL 104604 at *1 (S.D.N.Y. March 9, 1998) (Rakoff, D.J.). Other Judges in this Circuit also have agreed with Judge Sotomayor's conclusion. *See, e .g., O'Connor v. Kuhlman,* 97 Civ. 2914, 1998 WL 229516 at *1–2 (S.D.N.Y. May 7, 1998) (McKenna, D.J.); *Bond v. Walker,* 97 Civ. 3026, 1998 WL 229505 at *1–2 (S.D.N.Y. May 7, 1998) (McKenna, D.J.); *Lovett v. Khulman,* 97 Civ. 2995, 1998 WL 209618 at *3–4 (S.D.N.Y. April 29, 1998) (Mukasey, D.J.); *Williams v. Greiner,* 97 Civ. 3886, 1998 WL 205317 at *1 n. 1 (S.D.N.Y. April 27, 1998) (Chin, D.J .); *Matthews v. Artuz,* 97 Civ. 3334, 1998 WL 205310 at *2 n. 1 (S.D.N.Y. April 27, 1998) (Chin, D.J.); *Mangialino v. United States,* 97 Civ. 2720, 1998 WL 182443 at *2–3 (S.D.N.Y. April 17, 1998) (Chin, D.J.); *Hunter v. Khulman,* 97 Civ. 4692, 1998 WL 182441 at *2 (S.D.N.Y. April 17, 1998) (Chin, D.J.); *Terrence v. Senkowski,* 97 Civ. 3242, 1998 WL 182436 at *2 (S.D.N.Y. April 17, 1998) (Chin, D.J.); *Santana v. Khulman,* 97 Civ. 3882, 1998 WL 182433 at *2 (S.D.N.Y. April 17, 1998) (Chin, D.J.); *Robertson v. Artuz,* 97 Civ. 2561, 1998 WL 182428 at *2–3 (S.D.N.Y. April 17, 1998) (Chin, D.J.); *Brown v. Superintendent, Elmira Correctional Facility,* 97 Civ. 3303, 1998 WL 75686 at *3–4 (S.D.N.Y. Feb.23, 1998) (Mukasey, D.J.); *Brooks v. Artuz,* 97 Civ. 3300, 1998 WL 42567 at *3–4 (S.D.N.Y. Feb.4, 1998) (Koeltl, D.J.); *Garcia v. New York State Dep't of Correctional Servs.,* 97 Civ. 3867, 1997 WL 681313 at *2 n. 3 (S.D.N.Y. Oct.31, 1997) (Scheindlin, D.J.); *Avincola v. Stinson,* 97 Civ. 1132, 1997 WL 681311 at *2 n. 2 (S.D.N.Y. Oct.31, 1997) (Scheindlin, D.J.); *White v. Garvin,* 97 Civ. 3244, 1997 WL 626396 at *2 n. 4 (S.D.N.Y. Oct.8, 1997) (Scheindlin, D.J.); *Byas v. Keane,* 97 Civ. 2789, 1997 WL 605106 at *2 n. 2 (S.D.N.Y. Oct.1, 1997) (Scheindlin, D.J.); *LaTorres v. Walker,* 97 Civ. 3392, 1997 WL 605105 at *2 n. 3 (S.D.N.Y. Oct.1, 1997) (Scheindlin, D.J.). Judge Sweet's *Rosa* decision has not been followed by any other Judges in the Circuit, so far as the Court can determine.

Thus, Cromwell's habeas petition is untimely under the AEDPA's statute of limitations, which is not unconstitutional.

### C. *Cromwell's Claim of "Actual Innocence" Does Not Change the Result*

◼ In a thorough and well-reasoned discussion, Judge Sotomayor recently addressed the issue of whether an exception to the AEDPA statute of limitations is required by the Suspension Clause for "actual innocence" claims:

If there is any core function of habeas corpus—any constitutionally required minimum below which the scope of federal habeas may not be reduced—it would be to

free the innocent person unconstitutionally incarcerated. Thus, the question [of whether] the Suspension Clause require[s] that an exception for actual innocence be made to the AEDPA statute of limitations?—translates into the more basic question: Does the Suspension Clause require Congress to provide any federal habeas relief for state prisoners whatsoever?

This is an extremely difficult question, implicating as it does some of the most fundamental and fiercely contested issues of constitutional law—relations among the three branches of the federal government, relations between the federal and state governments, and the balancing of individual liberty interest against society's need for a criminal justice system that at some point rests in its adjudication of guilt.... When such momentous issues are involved, particularly where, as here, no clear guidance can be found from higher courts, this Court is mindful of the longstanding maxim of judicial restraint that it is " 'our duty to avoid deciding constitutional questions presented unless essential to proper disposition of the case.' " Thus, the Court turns to petitioner['s] claims to see whether, assuming an "actual innocence" exception to the statute of limitations exists, he could take advantage of it to have this Court hear his petition on the merits notwithstanding it being time-barred.

*Alexander v. Keane,* 991 F.Supp. 329, 338 (S.D.N.Y.1998) (citations omitted).[3]

In *Alexander,* Judge Sotomayor concluded that the petitioner had not shown "actual innocence," so that she did not need to reach a decision as to the existence of an "actual innocence" exception to the AEDPA's statute of limitations. *Id.* at 340.

Similarly, this Court will exercise judicial restraint by declining to decided this important constitutional issue unless required to do so. Therefore, the Court will first determine whether Cromwell has demonstrated "actual innocence."

Judge Sotomayor summarized the "actual innocence" standard announced by the Supreme Court in *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), and elaborated upon in *Schlup v. Delo,* 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), as follows:

Under *Schlup,* "the petitioner must show that is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327, 115 S.Ct. at 867. The Court emphasized that this is a question of actual innocence, and thus "the district court is not bound by the rules of admissibility that would govern at trial" but instead "must make its determination ... 'in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial.' " *Id.* at 327–28, 115 S.Ct. at 867 (quoting Henry Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments,* 38 U.Chi.L.Rev. 142, 160 (1970)).

The *Schlup* burden, it should be noted, is not whether no reasonable juror could find petitioner guilty, and is therefore less than the insufficiency of evidence standard of *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *See Schlup,* 513 U.S. at 330, 115 S.Ct. at 868. It is, however, a significantly higher burden than showing prejudice, which only requires a reasonable probability that the factfinder would have reasonable doubt, and moreover is evaluated only in light of the evidence that should have been properly before the factfinder. *See id.* at 332–33, 115 S.Ct. at 870 (O'Connor, J., concurring). In order to pass through the actual innocence gateway, a petitioner's case must be "truly extraordinary." *Id.* at 327, 115 S.Ct. at 867.

[T]he Court notes the admonition in *Schlup* that "to be credible, [a claim of actual innocence] requires petitioner to

---

**3.** *Accord, Bond v. Walker,* 97 Civ. 3026,1998 WL 229505 at *2 (S.D.N.Y. May 7, 1998) (McKenna, D.J.); *Mangialino v. United States,* 97 Civ. 2720, 1998 WL 182443 at *3 (S.D.N.Y. April 17, 1998)

(Chin, D.J.); *Robertson v. Artuz,* 97 Civ. 2561, 1998 WL 182428 at *2 (S.D.N.Y. April 17, 1998) (Chin, D.J.).

support his allegations of constitutional error with new reliable evidence that was not presented at trial." *Id.* at 324, 115 S.Ct. at 865; *see also id.* at 329, 115 S.Ct. at 868 ("a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonable, would have voted to find him guilty beyond a reasonable doubt") (emphasis added). This Court does not understand "new" evidence to be limited to evidence that was unavailable at trial, *see id.* at 328, 115 S.Ct. at 867 (court must evaluate "in light of . . . evidence tenably claimed to have been wrongly excluded or to have become available only after the trial"), but that a claim of actual innocence must at least present evidence that the original factfinder did not consider to be cognizable. *Accord Embrey v. Hershberger,* 131 F.3d 739, 740–41 (8th Cir.1997) (en banc). Given the probabilistic standard of *Schlup,* a claim without new evidence unseen by the jury, to be successful, would put the court in the position of asserting that one of the jurors acted reasonably.

*Alexander v. Keane,* 991 F.Supp. at 339–40.[4]

Cromwell's sixth habeas claim asserted his "actual innocence," referring the Court to point three of his state CPL § 440.10 motion papers to flesh out his actual innocence claim. (Cromwell 3/31/98 Aff. at pp. 4–5; Cromwell "Procedural History & Claims Presented" Supp. to Petition at p. 7.) Reference to point three of Cromwell's CPL § 440.10 papers reveals that Cromwell's claim of actual innocence amounts to his assertion that several witnesses, including two police officers, lied at trial. To support this proposition, Cromwell only relies upon evidence offered at trial, including Cromwell's own testimony. In other words, Cromwell does not offer any new evidence that was not considered by the jury, and instead essentially asks the Court to find that "none of the jurors acted reasonably" when they chose to believe the prosecutor's witnesses and disbelieve Cromwell's testimony. This the Court cannot do. Cromwell has not made a color-

able showing of actual innocence, and the Court need not reach the constitutional questions raised above.

### CONCLUSION

For the reasons set forth above, the Court should dismiss with prejudice Cromwell's petition as barred by the AEDPA's one-year statute of limitations.

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff, 500 Pearl Street, Room 750, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Rakoff. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL—CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

May 27, 1998.

---

**4.** *See also, e.g., Bousley v. United States,* 614 U.S. 523, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)

(latest Supreme Court decision of the meaning of "actual innocence").